UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| SWINGAWAY SPORTS PRODUCTS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:13-cv-00024-RLY-WGH |
| ESCALADE, INC., d/b/a ESCALADE SPORTS, | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS FOR
FAILURE TO PROSECUTE**

Plaintiff, SwingAway Sports Products, Inc. ("SwingAway"), filed this civil action against Defendant, Escalade, Inc., d/b/a Escalade Sports ("Escalade"), alleging patent infringement, reverse palming-off in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), violations of the Illinois Deceptive Trade Practices Act, and tortious interference with prospective economic advantage.  Escalade now moves to dismiss the case under Federal Rule of Civil Procedure 41(b) and Local Rule 41.1 due to SwingAway's failure to prosecute.  For the reasons set forth below, the court **DENIES** Escalade's motion.

**I.    Background[1]**

SwingAway makes and sells highly-acclaimed, innovative, and patented baseball and softball hitting and fielding training systems.  (Compl. ¶ 1).  Each of its products

---

[1] For purposes of this motion, the following facts taken from the Complaint are presumed to be true.

1

bears the SWINGAWAY® trademark while also incorporating SwingAway's patented features, such as its ball returning dampening feature. (*Id*.). SwingAway is a Georgia corporation that was formed in 2008 and has its principal place of business in Marietta, Georgia. (*Id*. at ¶¶ 2, 14). It has now established itself as a leader in the market for baseball and softball training aids, with projected sales of more than $1 million in 2012. (*Id*. at ¶ 3).

Escalade is an Indiana corporation with its principal place of business in Evansville, Indiana. (*Id*. at ¶ 15). Escalade is in the business of making and selling sports-related equipment and products for a variety of sports, including basketball goals, gaming tables, fitness equipment, and table tennis equipment. (*Id*. at ¶ 16). Escalade's average revenue from these products averages over $100 million annually. (*Id.*).

SwingAway is the assignee of U.S. Patent No. 5,795,250 ("the '250 patent"), entitled "TETHERED BALL PRACTICE DEVICE," which issued on August 18, 1998 (*Id*. at ¶ 23). The '250 patent covers all of SwingAway's baseball and softball training aids. (*Id*. at ¶ 25). Subsequently, on March 29, 2011, SwingAway was awarded a second patent – U.S. Patent No. 7,914,400 ("the '400 patent"), entitled "BASEBALL PRACTICE SYSTEMS." (*Id*. at ¶ 27). This covered additional features on some of SwingAway's training aid products. (*Id.*). Additionally, SwingAway owns the federally-registered SWINGAWAY® trademark. (*Id*. at ¶ 29).

On June 18, 2011, SwingAway's president, John Flading, attended a trade show at the College World Series in Omaha, Nebraska. (*Id*. at ¶ 30). An industry-renowned hitting instructor alerted Flading that a SwingAway hitting and field aid was on display at

another exhibitor's booth – Escalade. (*Id*. at ¶ 31). Because SwingAway is the only authorized seller of the patented SwingAway system, Flading went to Escalade's booth and observed a training system identical in all material respects to a SwingAway device, including the ball return dampening system covered by the '250 patent. (*Id*. at ¶ 32). This product had been instead identified as a "Goalrilla Spring Trainer," though on closer inspection Flading discovered it was a SwingAway device with only minor cosmetic changes. (*Id*. at ¶ 33). For example, Escalade replaced the frame around the return backstop net with orange steel and substituted the target area on that net with a mat incorporating the Goalrilla logo. (*Id*.). Moreover, the key components of the Goalrilla Spring Trainer were actually parts physically taken from a SwingAway training device. (*Id*. at ¶ 34). In fact, Flading discovered that Escalade had simply rubbed off the SWINGAWAY® trademark from the exhibited device. (*Id.* at ¶ 34).

Flading alerted Escalade personnel at the booth that the device incorporated SwingAway parts and infringed at least SwingAway's '250 patent. (*Id*. at ¶ 35). In response, Escalade personnel showed Flading copies of documents reflecting that the '250 patent had lapsed for failure to pay routine maintenance fees. (*Id.* at ¶ 36). SwingAway alleges that it instructed its counsel to pay such fees, but its counsel inadvertently failed to do so. (*Id*.). Escalade acknowledged that its device was covered by the claims of the '250 patent but maintained that as a result of this lapse, it was free to make, use, offer to sell, and sell products that read on the claims of the '250 patent. (*Id.* at ¶¶ 37-38).

That same day, Flading contacted SwingAway's patent counsel. (*Id*. at ¶ 40). Counsel acknowledged their mistake in not paying the fee and filed a petition with the Patent and Trademark Office ("PTO"), which advised of counsel's inadvertent error, paid the maintenance fee, and requested immediate reinstatement of the '250 patent. (*Id*.). The PTO later reinstated the '250 patent that same day, and it remains in force. (*Id.* at ¶ 41).

On June 20, 2011, Escalade filed an action against SwingAway before this court seeking a declaratory judgment of non-infringement with respect to the '250 patent. Escalade, however, neither served a summons upon SwingAway nor took any other steps to perfect service or prosecute its case. (Pl.'s Resp. 5). As a result, SwingAway did not respond and the 120-day period for service under Rule 4(m) expired on October 18, 2011. On December 29, 2011, Escalade moved to voluntarily dismiss the case, which this court granted. Escalade contends that it allowed the 120-day service period to expire because it assumed that SwingAway had acquiesced with respect to Escalade's position that it had intervening rights with respect to the '250 patent. (Def.'s Mot. Dismiss 3).

On November 8, 2011, approximately five months after the trade show, SwingAway filed the present lawsuit in the Northern District of Illinois. Escalade then moved to transfer the case to the Southern District of Indiana. On April 23, 2012, District Judge Gettleman granted the motion to transfer to this court "[b]ecause the action has no significant connection to the Northern District of Illinois." (Dkt. 29). The Illinois Court did not immediately transfer the case to this court; rather, the case was not transferred until SwingAway's counsel contacted the clerk of the Northern District of

Illinois on February 11, 2013 – almost ten months after the case was closed in Illinois. Escalade now brings a motion to dismiss for failure to prosecute.

## II. Discussion

The court has the power to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." FED. R. CIV. P. 41(b).[2] Dismissal for failure to prosecute is an "extraordinarily harsh sanction that should be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Gabriel v. Hamlin*, 514 F.3d 734, 736 (7th Cir. 2008) (citations and internal quotation marks omitted). This rule "serves not only to protect defendants but also to aid courts in keeping administrative control over their own dockets and to deter other litigants from engaging in similar dilatory behavior." *Washington v. Walker*, 734 F.2d 1237, 1239 (7th Cir. 1984). In making this determination, the court should consider all circumstances of the case. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011).

The Seventh Circuit has suggested several factors in making this decision, among others: (1) the frequency of the plaintiff's failure to comply with deadlines; (2) the effect of the mistakes on the judge's calendar; (3) the prejudice that the delay caused to the defendant; (4) the merit of the suit; and (5) the consequences of dismissal for the social

---

[2] Local Rule 41.1 of the Southern District of Indiana states: "The court may dismiss a civil case with judgment for costs if: (a) the plaintiff has not taken any action for 6 months; (b) the judicial officer assigned to the case or the clerk has given notice to the parties that the case will be dismissed for failure to prosecute it; and (c) at least 28 days have passed since the notice was given." However, the parties' briefs -- and the court's analysis -- focus on Federal Rule of Civil Procedure 41(b). Moreover, since this case has not even been in this court's jurisdiction for six months, Local Rule 41.1 is not applicable here.

objectives that the litigation represents. *Id.* (citations omitted). In addition, courts have also considered whether the court provided a warning to counsel prior to dismissal. The court now examines these factors.

### A. Warning of Dismissal

Although providing an explicit warning in advance of dismissal is advisable in most circumstances, it is not required by a judge in every case. *Heartland Mem'l Hosp. LLC v. Gupta*, 461 B.R. 746, 752 (N.D. Ind. 2011); *but see Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (stating that "there must be an explicit warning before the case is dismissed [for failure to prosecute]"). The Seventh Circuit explained that it did not intend for *Ball* to create a rigid requirement for a warning prior to dismissal; rather, it intended to "provide a useful guideline to district judges -- a safe harbor to minimize the likelihood of appeal and reversal." *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006). Indeed, the Court noted that if a warning were required before a court could dismiss a case, each litigant would be granted "one opportunity to disregard the court's schedule without fear of penalty regardless of the harm done to other litigants." *Id.*

Here, no such warning has been given, but it is difficult to determine who actually would have provided one – the Northern District of Illinois who closed the case or this court who did not even know of its existence? That said, any public policy concerns about giving litigants a "free pass" are not present here as SwingAway did not simply wait for court action but instead took active steps to move the case forward. Thus, this factor does not support either side.

6

## B. Frequency of Plaintiff's Failure to Comply with Deadlines

Escalade contends that SwingAway has demonstrated a "long-term pattern of inactivity and unreasonable delay in protecting its purported rights" by: (1) failing to pay the maintenance fee for the '250 patent; (2) failing to respond to Escalade's declaratory judgment action; (3) waiting five months to file an action in the Northern District of Illinois; and (4) waiting ten months to prompt the Northern District of Illinois to effectuate the transfer to this court.

First, as SwingAway contends, its activities prior to this litigation are irrelevant to this analysis, and Escalade has not cited authority holding otherwise. Escalade's argument misses the point of Rule 41(b), which is premised upon the "district courts' ability to manage efficiently their heavy caseloads and thus protect the interests of all litigants." *Roland v. Salem Contract Carriers, Inc*., 811 F.2d 1175, 1177-78 (7th Cir. 1987). Thus, SwingAway's failure to pay a maintenance fee has no bearing on the court's caseload and is not relevant here. Similarly, SwingAway's "failure" to respond to Escalade's declaratory judgment action not only does not concern the present case but also is a weak argument at best. Indeed, Escalade does not dispute failing to effectively serve SwingAway with the complaint for this action, so it is a stretch to say SwingAway was "sleeping on its rights" when it had no legal duty to respond. Thus, neither of these factors has any bearing on the court's analysis.

As to the current litigation, SwingAway's filing of the complaint approximately five months after learning of the alleged infringement is not a sign of delay on SwingAway's part. Again, the period of time prior to SwingAway's filing of the action

7

has no effect on the court's docket or resources.  And SwingAway was under no obligation to rush to the courthouse upon first noticing potential infringement of its patents; indeed, the statue of limitations for infringement actions is six years.  *See* 35 U.S.C. § 286 ("no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action").  Also, as a policy matter, courts promote developing and researching one's case before filing in court instead of immediately filing an action upon the discovery of any sliver of a potential claim.

Lastly, and most importantly for this analysis, the court examines SwingAway's delay in effectuating the transfer from the Northern District of Illinois to the Southern District of Indiana.  To be sure, SwingAway neither missed a court hearing nor failed to comply with any court orders or rules of practice.  This does not end the inquiry, however, as overt misbehavior is not required for dismissal.  Indeed, "'failure to prosecute' under the rule does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by the regular machinery of the court.  It is quite sufficient if he does nothing, knowing that until something is done there will be no trial." *Washington*, 734 F.2d at 1238 (citation omitted); *see also Heartland Memorial Hosp.*, 461 B.R. at 755 (finding that "inaction, alone, is sufficient to justify dismissal").

That said, the inaction here is minimal.  During this ten month period, SwingAway obtained local counsel in Indiana and likely informed them about the case.  Though this should not have taken a significant portion of these ten months, it is understandable that

8

local counsel would want to evaluate the case prior to taking active steps to move it forward. But at the crux of this dispute is the failure of the Northern District of Illinois to transfer the case. The court agrees with Escalade that the duty of moving a case forward lies with the plaintiff, not the court, and SwingAway's counsel should have been more diligent in effectuating the transfer. This lapse of several months alone, however, is no where near the delay necessary to merit dismissal under Rule 41(b). *See, e.g.*, *Cohen v. Hoyer*, 32 F. App'x 755, 759 (7th Cir. 2002) (upholding dismissal for failure to prosecute where plaintiff was inactive for over 20 months, failed to answer defendant's counterclaim, and ignored defendant's efforts to conduct discovery); *Washington*, 734 F.2d at 1240 (affirming dismissal for lack of prosecution where plaintiffs had done nothing to move it forward for more than five years); *Heartland Mem'l Hosp.*, 461 B.R. at 754 (denying appeal to dismissal for failure to prosecute where fourteen-month period of inaction followed an eighteen-month period of additional inactivity by prior attorneys). Even more, since being transferred to this court, SwingAway has engaged in discovery with Escalade and attempted to arrange a Rule 16 conference, so it cannot be said that it has been sleeping on its rights since entering this court. Accordingly, this factor does not support dismissal.

### C. Effect on Court's Calendar

This factor should be given the least amount of consideration when considering dismissal as a sanction. *Allen v. Interstate Brands*, 186 F.R.D. 512, 521-22 (S.D. Ind. 1999). As this court only recently opened this case, it will not have a substantial effect on its calendar. Indeed, SwingAway's delay did not force this court to take time away

from other matters as it was not even aware of the case. Thus, this does not support dismissal.

### D. Prejudice that the Delay Caused to the Defendant

Escalade contends that it has been prejudiced by SwingAway's delay because (1) it closed its files after six months of inactivity, (2) witness memories are more attenuated, and (3) damages may have increased due to further sales by Escalade. Although "prejudice may be presumed from an unreasonable delay," as noted above, the delay here is minimal. *Washington*, 734 F.2d at 1239. Escalade's decision to "close" its files and consider the matter resolved after an arbitrary period has no effect. Escalade knew SwingAway had used resources to bring a lawsuit and should not have assumed without any other confirmation that SwingAway had abandoned this case. Escalade's next contention regarding witnesses, however, does hold some weight as "delays may make the arduous task of mounting a defense even greater." *Allen*, 186 F.R.D. at 522. While the court appreciates the additional time and anxiety created by delays in litigation, the length of time here has not been onerous. Finally, Escalade's argument regarding any additional damages due to the delay does not need to be addressed at this time as the court will not put the cart before the horse by determining the life of the suit based on any potential damages at the end. Accordingly, this factor slightly tips in Escalade's favor.

### E. Merit of the Suit

At this time it is difficult for the court to determine the merits of the suit as little, if any, discovery has taken place. Escalade contends that even if its device is covered by SwingAway's patent, it has a meritorious defense of intervening rights under 35 U.S.C. §

41(c)(2). It is improper at this time, though, to decide not only whether that defense applies, but also to what extent it covers Escalade's sales. Giving the plaintiff the benefit of the doubt, the court concludes that there is merit to SwingAway's suit. *See Allen*, 186 F.R.D. at 522-23.

### F. Consequences of Dismissal for the Social Objectives that the Litigation Represents

SwingAway's litigation represents the essence of patent law; that being, the promotion of innovation and competition. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1352 (Fed. Cir. 1999). Here, SwingAway obtained a patent and now looks to enforce the rights deriving from it. If the court prevented this case from reaching the merits, it would devalue such goals of the patent system. *See Allen*, 186 F.R.D. at 523 ("If there is merit to the suit, dismissal on other grounds eradicates the social objectives"). Accordingly, this factor does not support dismissal.

### III. Conclusion

For the reasons set forth above, the court finds that this action should not be dismissed pursuant to Federal Rule of Civil Procedure 41(b). Accordingly, Escalade's motion to dismiss (Docket # 38) is **DENIED**.

**SO ORDERED** this 7th day of June 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.