UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| SWINGAWAY SPORTS PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ESCALADE, INC. d/b/a ESCALADE SPORTS, INDIAN INDUSTRIES, INC., MICHAEL GUERZINI, JAMES R. ALLSHOUSE, and DAVID FETHERMAN, <br><br> Defendants. | CASE NO. 3:13-cv-00024-RLY-WSH |

**FRIST AMENDED COMPLAINT**

For its First Amended Complaint against defendants Escalade, Inc., d/b/a Escalade Sports, Indian Industries, Inc., Michael Guerzini, James R. Allshouse, and David Fetherman, plaintiff SwingAway Sports Products, Inc. ("SwingAway") states as follows:

**Summary Of Case**

1. SwingAway makes and sells a highly-acclaimed, innovative, *and patented* baseball and softball hitting and fielding training systems. SwingAway makes and sells several training systems geared toward individual players and teams at every level of the games of baseball and softball. Each of these bears the SWINGAWAY® trademark, and all of them incorporate SwingAway's patented features, including its ball return dampening feature. These patented features set SwingAway's training systems apart from other hitting aids in the marketplace and are the foundation on which SwingAway's past success and hopes for further growth are based.

2. SwingAway was formed in 2008 by its current president and CEO, John Flading, Mr. Flading's former college roommate, and his roommate's brother. Mr. Flading left a successful 30-year career as a Director of Private Wealth Management at Deutsche Bank to pursue the business of SwingAway, which afforded him an opportunity to combine his business acumen with his passion for baseball.

3. Since its formation, SwingAway has established itself a leader in the market for baseball and softball training aids. Its annual sales of its SwingAway product line have increased exponentially year after year, with annual sales now topping $1 million.

4. SwingAway's remarkable growth and success has not come by accident. It is a product of significant hard work.

5. It has worked to place its products for sale with the nation's largest retail sporting goods chains, and to secure inclusion in industry publications and catalogs, including Baseball Express, the recognized "bible" for baseball training products.

6. SwingAway consistently re-invests the revenue earned from sales to ensure its continued growth and success. It regularly seeks opportunities to improve upon and expand its product offerings.

7. Recognizing the unique nature of high quality of its products, SwingAway has invested heavily in the protection of its valuable intellectual property, securing patent and trademark protection in the United States, as well as in other countries with strong baseball markets, such as Japan. SwingAway has consistently and properly marked its training products with its patents, and has consistently marketed those products as "patented."

8. SwingAway's products and success have not gone unnoticed among baseball professionals and in the marketplace. SwingAway products are used for hitting and fielding

training in every major league baseball park in this country. Professional managers, players, and hitting instructors use and endorse the products.

9. Indeed, former professional baseball managers like Bobby Cox and former professional players like Gary Sheffield, Dante Bichette, and Rafael Palmiero have purchased SwingAway products for use as training aids for their own families.

10. SwingAway has secured endorsements from current and formers major leave players and managers, as well as from professional softball players and managers. For example, most recently, SwingAway entered into an endorsement deal with former #1 draft pick and top major league prospect, Bryce Harper, who has used SwingAway products for hitting training since his days as a top amateur player.

11. SwingAway's competitors have also taken notice. Some of these, including Rawlings and Hillerich & Bradsby (d/b/a Louisville Slugger®) had, prior to the acts that give rise to this Complaint, discussed with SwingAway the possibility of licensing SwingAway's intellectual property and/or entering into partnerships with SwingAway.

12. Some of these competitors have tried unsuccessfully to emulate the distinctive benefits without copying the patented features. But one competitor – Escalade – in an effort to enter the market for baseball and softball training aids for the first time, dispensed with any pretense of fair competition, and avoided the expenditure of its resources by simply copying the patented SwingAway product.

13. By this lawsuit, SwingAway seeks to enforce its valuable intellectual property and protect its place in the market, and seeks damages and injunctive relief for Defendants' willful patent infringement and unfair competition.

## The Parties

14. SwingAway is a corporation organized and existing under Georgia State law. SwingAway has a principal place at 4781 Waterhaven Bend, Marietta, Georgia 30062, and regularly conducts business in this judicial district.

15. On information and belief, Escalade, Inc. is an Indiana corporation having a principal place of business at 817 Maxwell Avenue, Evansville, Indiana 47711.

16. On information and belief, Indian Industries, Inc. is an Indiana corporation having a principal place of business at 817 Maxwell Avenue, Evansville, Indiana 47711. Indian Industries is a wholly owned subsidiary of Escalade, Inc.

17. On information and belief, Michael Guerzini ("Guerzini") is, and at all relevant times was, Director of Product Development for Escalade, Inc. and/or Indian Industries, Inc., and in that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

18. On information and belief, James R. Allshouse ("Allshouse") is, and at all relevant times was, Vice President of Product Development and Operations for Escalade, Inc. and/or Indian Industries, Inc., and in that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

19. On information and belief, David Fetherman ("Fetherman") is, and at all relevant times was, Vice President of Sales and Marketing for Escalade, Inc. and/or Indian Industries, Inc., and in that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

20. On information and belief, Escalade, Inc. and Indian Industries, Inc. are in the business of making and selling sports-related equipment and products for a variety of sports under such well-known brands of Goalrilla™, Goaliath®, and Silverback® for basketball backboards and goals; Harvard®, Atomic®, and Accudart® for gaming tables; Mosconi® and Mizerak® for pool tables and accessories; STEP® and USWeight™ for fitness equipment; Bear Archery® and Trophy Ridge® for archery; and STIGA® and Ping-Pong® for table tennis equipment. The Defendants' revenue for sales of their sporting goods products exceeds $100 million annually.

21. Until further discovery is conducted, Plaintiff is unable to determine precisely which corporate entity – Escalade, Inc., and/or Indian Industries, Inc. – is responsible for the patent infringement and other wrongful acts alleged in the Complaint. Accordingly, all of the allegations of infringement and other wrongdoing are specially made against both of these corporate Defendants, as well as the three individual Defendants named herein. For ease of reference, "Escalade" shall refer collectively to both Defendants for the remainder of this Complaint.

22. On information and belief, Defendants regularly and systematically conduct business throughout the United States and in this judicial district by selling its products in a variety of stores, as well as via Internet websites, including but not limited to www.goalrilla.com and www.escaladesports.com.

**Jurisdiction And Venue**

23. This Court has jurisdiction over the subject matter of SwingAway's claims under the U.S. Patent Act and the Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338, because those claims arise under federal law.

24. This Court has supplemental jurisdiction over SwingAway's claims under Illinois State law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to SwingAway's patent law and Lanham Act claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

25. This Court has general and specific personal jurisdiction over Defendants because, among their offices are located in the this judicial district, and they have offered for sale, shipped, or sold products in this district that directly or indirectly infringe the '250 patent.

26. Venue is proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district and, therefore, "reside" in this judicial district according to federal law.

### Relevant Facts

**A. SwingAway's Intellectual Property**

27. On August 18, 1998, the United States Patent and Trademark Office issued U.S. Patent No. 5,795,250 ("the '250 patent"), which is entitled "TETHERED BALL PRACTICE DEVICE." A true and correct copy of the '250 patent is attached as **Exhibit A**.

28. By assignment, SwingAway is and has been at all times relevant to the claims of this Complaint, the sole owner of all right, title, and interest to the '250 patent, including the right to recover for past infringement.

29. The '250 patent covers all of SwingAway's baseball and softball training aids.

30. For years, in accordance with 35 U.S.C. § 287, SwingAway has marked the packages of its hitting machines with the '250 patent.

31. SwingAway was subsequently awarded a second U.S. Patent on March 29, 2011. U.S. Patent No. 7,914,400 ("the '400 patent") is entitled "BASEBALL PRACTICE

SYSTEMS," and covers additional features on some of SwingAway's training aid products. A true and correct copy of the '400 patent is attached to this Complaint as **Exhibit B**.

32. SwingAway solely owns all right, title, and interest in the '400 patent, including the sole right to recover for infringement of any claims of that patent.

33. In connection with the marketing and sale of its hitting machines, SwingAway also owns the federally-registered SWINGAWAY® trademark, Reg. No. 2,264,985. A true copy of the SWINGAWAY® registration is attached as **Exhibit C**.

**B.    Defendants' Wrongful Acts**

34. On or about June 18, 2011, SwingAway's president and CEO, John Flading, attended a trade show and exhibition at the College World Series in Omaha, Nebraska.

35. Almost immediately after arriving there, Mr. Flading was approached in SwingAway's booth by an industry-renowned baseball hitting instructor who was scheduled to deliver a seminar at the trade show. He advised Mr. Flading that he had seen a SwingAway hitting and fielding aid on display at another exhibitor's booth, and he directed Mr. Flading to Escalade's booth.

36. Because SwingAway is the only authorized seller of the patented SwingAway system, Mr. Flading immediately went to Escalade's booth, where he observed a training system identical in all material respects – including the ball return dampening system covered by the '250 patent – to a SwingAway device. The product at the Escalade booth was identified as a "Goalrilla Spring Trainer."

37. In fact, on closer inspection, Mr. Flading discovered that the "Goalrilla Spring Trainer" was a SwingAway device with minor, insubstantial cosmetic changes. For example, Escalade had replaced the frame around the return backstop net with orange steel, and replaced the target area on that net with a mat incorporating the Goalrilla logo.

7

38. But the key components of the "Goalrilla Spring Trainer" were actually parts physically taken from a SwingAway training device. These parts include all of the components of the patented ball return dampening feature. In fact, on inspection of the product exhibited as a "Goalrilla Spring Trainer," Mr. Flading discovered that Escalade had simply rubbed off the SWINGAWAY® trademark from the exhibited SwingAway trainer.



SWINGAWAY® mark rubbed off

39. On or about June 18, 2011, Mr. Flading identified to Escalade personnel at the exhibit booth that the "Goalrilla Spring Trainer" as exhibited incorporated SwingAway parts and infringed at least SwingAway's '250 patent.

40. Escalade was fully aware of the '250 patent at that time. Escalade personnel showed Mr. Flading copies of documents reflecting Escalade's belief that the patent had lapsed as a result of an inadvertent failure on the part of SwingAway's patent counsel to pay a routine maintenance fee, despite SwingAway's prior instruction to pay all such fees.

41. Escalade asserted that, as a result of this lapse, it was free to make, use, offer to sell, and sell in the United States, and to import into the United States products that read on the claims of the '250 patent.

8

42. Escalade acknowledged at that time that its "Goalrilla Spring Trainer" was covered by the claims of the '250 patent.

43. Mr. Flading immediately contacted SwingAway's patent counsel, who acknowledged that they had failed to follow SwingAway's instructions and inadvertently failed to pay the required maintenance fee.

44. On June 18, 2011, SwingAway's patent counsel filed a petition with the U.S. Patent and Trademark Office advising of counsel's inadvertent error, paying the maintenance fee, and requesting immediate reinstatement of the '250 patent.

45. On June 18, 2011, the U.S. Patent and Trademark Office, pursuant to this petition, reinstated SwingAway's '250 patent, and that patent was, and remains, in force.

C. **Guerzini's, Allshouse's, and Fetherman's Involvement in Escalade's Patent Infringement and Other Wrongdoing**

46. On information and belief, Michael Guerzini is, and at all relevant times was, Director of Product Development for Escalade, Inc. and/or Indian Industries, Inc., and in that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

47. On information and belief, James R. Allshouse is, and at all relevant times was, Vice President of Product Development and Operations for Escalade, Inc. and/or Indian Industries, Inc., and in that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

48. On information and belief, David Fetherman is, and at all relevant times was, Vice President of Sales and Marketing for Escalade, Inc. and/or Indian Industries, Inc., and in

9

that capacity oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

49. Guerzini, Allshouse, and Fetherman, in their respective capacities described above, each had personal knowledge of the '250 Patent during the times in which they oversaw and/or actively participated in the development, marketing, and sales of the product that is alleged herein to have infringed on SwingAway's patent and other rights.

50. Guerzini, Allshouse, and Fetherman, in their respective capacities described above, each controlled and/or actively participated in the acts of infringement and other wrongdoing that are alleged in this Complaint.

51. Due to the involvement of Guerzini, Allshouse, and Fetherman in the development, marketing, and sales of the infringing product, each of the allegations in this Complaint against Escalade, Inc. and Indian Industries, Inc., is specifically imputed to and made against each of these individual Defendants as well.

D. The Effects of Escalade's Conduct

52. For years, SwingAway has relied on the quality of its products and their unique and patented features to make inroads with retail outlets specializing in sales of training aids for baseball and softball. Those products are carried in and available for sale at one of the largest retail sporting goods stores in the United States, various Internet websites specializing in retail sales of sporting goods and baseball equipment, and industry catalogs.

53. Among other such Internet retail venues, SwingAway's training products were listed and sold online at the website for Dick's Sporting Goods, one of the nation's largest retailers of sporting good equipment.

54. Indeed, within months of SwingAway's first appearance on Dick's Sporting Goods' Internet "store," its hitting and fielding trainers were the largest selling products in the baseball and softball hitting aid category.

55. In support of its highly profitable relationship with Dick's, SwingAway entered into a vendor contract with that retailer in early 2011.

56. Thereafter, in early 2011, SwingAway entered into discussions with Dick's for placement of its products in Dick's Sporting Goods brick-and-mortar stores.

57. In furtherance of these discussions, SwingAway made changes to its product packaging recommended by Dick's

58. SwingAway also agreed to adjust its margins at Dick's request to ensure that sale at Dick's would yield sufficient profit to the retailer, and thus, to enhance the probability of placing its SwingAway trainers in the stores.

59. To further satisfy Dick's, SwingAway actively pursued additional "big name" major league player endorsements for its products.

60. As late as June 2011, Dick's was continuing its discussions with SwingAway regarding adding the products to its brick-and-mortar store offerings.

61. However, suddenly in September 2011, Dick's notified SwingAway that it would not include the SwingAway trainers in the product assortment for its brick-and-mortar stores. Instead, Dick's indicated that it was pursuing other opportunities for that category of products for its stores, but wanted to retain SwingAway for sale on the Internet website.

62. Shortly thereafter, SwingAway saw that the "Goalrilla Spring Trainer" had been added to Dick's Internet website and was available for sale there. A true and correct copy of the

11

Dick's website listing for Escalade's infringing product, as it appeared on November 8, 2011, is attached to this Complaint as **Exhibit D**.

63. On information and belief, the "Goalrilla Spring Trainer" has been added to the product assortment for baseball and softball training aids in Dick's brick-and-mortar stores.

64. On information and belief, Escalade sells various of its products in Dick's brick-and-mortar stores, including but not limited to its Goalrilla™ and Goaliath® basketball backboards and goals.

65. On information and belief, Escalade leveraged its position as a supplier to Dick's of those products to place its "Goalrilla Spring Trainer" into Dick's stores and to displace SwingAway despite SwingAway's recognized success among customers at Dick's Internet website.

### Count One
*Patent Infringement*

66. SwingAway incorporates by reference all allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

67. Escalade has directly infringed, and continues to directly infringe, one or more claims of the '250 patent by making, using, importing into the United States, offering for sale, or selling baseball practice devices, including the Accused Product, in the United States that are covered by the '250 patent.

68. SwingAway has not licensed, assigned, or otherwise granted Escalade any rights under the '250 patent.

69. To the extent Escalade makes, uses, imports, sells, or offers to sell the components of the baseball practice devices, including the Accused Product, Escalade has

actively induced infringement under 35 U.S.C. § 271(b) because it knew, or should have known, that doing so would induce others to actually infringe the '250 patent.

70. Escalade has contributed to infringement under 35 U.S.C. § 271(c) by importing, making, offering for sale, and selling specially-made components of the baseball practice devices, including the Accused Product, none of which are staple articles or commodities of commerce suitable for substantial non-infringing use, with knowledge that the parts are especially made or especially adapted for use in an infringement of the '250 patent.

71. Escalade's infringement of the '250 patent was, and continues to be, willful and deliberate; and Escalade almost certainly will continue its infringing activities unless restrained by this Court.

72. Escalade's infringement of the '250 patent is exceptional under 35 U.S.C. § 285.

73. Escalade's activities were done with an intent to, and in fact did allow SwingAway to, derive benefit from use of SwingAway's '250 patent.

74. Escalade has profited, and will continue to profit, by its infringing activities.

75. SwingAway has been damaged by Escalade's infringing activities and will continue to be irreparably injured unless the infringing activities are enjoined by this Court.

**Count Two**
*Reverse Palming Off under the Lanham Act*

76. SwingAway incorporates by reference all allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

77. Escalade removed the SWINGAWAY® mark from the key components of SwingAway's device, made insubstantial cosmetic changes, and then held the machine out as its own product at the 2011 College World Series, and on information and belief, at other similar trade shows and exhibitions.

78. On information and belief, Escalade also used this device in an effort to secure placement of its Accused Product at retail stores and on Internet websites selling specialty baseball and softball training aids.

79. Such deceptive practices are calculated to confuse consumers into thinking Escalade's Accused Products are the same as SwingAway's hitting machines or that Escalade makes or sells hitting machines that, in reality, are made and sold by SwingAway., and are reasonably likely to achieve that desired result.

80. By its conduct, Escalade has engaged in reverse palming off as prohibited by the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

81. Escalade executed its deceptive acts with the specific intent of harming SwingAway by, among other things, taking its sales.

82. As a direct and proximate result of Escalade's deception, SwingAway has suffered, and will continue to suffer, damages in an amount to be determined at trial.

83. As a direct and proximate result of Escalade's deception, SwingAway has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless and until it is enjoined by the Court.

## Count Three
*Tortious Interference with Prospective Economic Advantage*

84. SwingAway incorporates by reference all allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

85. SwingAway had previously entered into a vendor contract with Dick's Sporting Goods and was selling its products on Dick's Internet website with great success.

86. Pursuant to that vendor contract, SwingAway and Dick's were engaged in discussion to expand their relationship by having SwingAway's products added to the product

assortment sold in Dick's brick-and-mortar stores in the baseball and softball training aid category.

87. SwingAway had a reasonable expectation of expanding its vendor relationship with Dick's, having accepted and acted on all of Dick's recommendations to allow for SwingAway's products to be sold in Dick's brick-and-mortar stores.

88. On information and belief, Escalade had knowledge of SwingAway's reasonable expectation by virtue of its monitoring of SwingAway's business activity and by reason of Escalade's vendor relationship with Dick's in a variety of other product categories.

89. On information and belief, Escalade purposefully interfered with SwingAway's expectancy, and by its unlawful and tortuous conduct as described herein, displaced SwingAway in Dick's brick-and-mortar stores with Escalade's infringing "Goalrilla Spring Trainer" device.

90. As a direct and proximate result of Escalade's tortuous interference, SwingAway has sustained substantial damage in an amount to be proven at trial, but in no event less than $100,000, which damages consist of profits that SwingAway would have earned by its sales of its products at Dick's stores and profits earned by Escalade for sales of its "Goalrilla Spring Trainer" products through those stores.

## Count Four
*Inducement of Infringement*

91. SwingAway incorporates by reference all allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

92. On information and belief, Guerzini, Allshouse, and Fetherman, in their management, control, and active assistance of Escalade, have knowingly and intentionally induced Escalade to infringe the '250 patent and are liable to SwingAway for this inducement.

93. On information and belief, Guerzini, Allshouse, and Fetherman, in their management, control, and active assistance of Escalade, have knowingly and intentionally induced purchasers of Escalade's products to infringe the '250 patent by causing such purchasers to make, use or re-sell infringing devices and are liable to SwingAway for this inducement.

94. On information and belief, Escalade, Inc., in its management, control, and active assistance of Indian Industries, Inc., has knowingly and intentionally induced Indian Industries, Inc. to infringe the '250 patent and is liable to SwingAway for this inducement.

95. SwingAway has been damaged by such infringement, and will continue to be so damaged, unless Defendants are enjoined and ordered by the Court to account to SwingAway.

96. On information and belief, Guerzini, Allshouse, Fetherman and Escalade, Inc.'s infringement has been willful.

97. This case is an exceptional case pursuant to 35 U.S.C. 285, and therefore SwingAway is entitled to an award of attorney's fees and costs.

**Prayer for Relief**

**WHEREFORE**, Plaintiff SwingAway Sports Products, Inc. respectfully requests that this Court:

    A. Enter judgment in favor of SwingAway and against Defendants on all counts of this Complaint;

    B. Enter judgment in SwingAway's favor that Defendants have directly infringed one or more claims of the '250 patent under 35 U.S.C. § 271(a);

  C. Enter judgment in SwingAway's favor that Defendants have indirectly infringed of one or more claims of the '250 patent under 35 U.S.C. § 271(b);

  D. Enter judgment in SwingAway's favor that Defendants have willfully infringed one or more claims of the '250 patent under 35 U.S.C. § 271(c);

  E. Award to SwingAway preliminary and permanent injunctive relief enjoining Defendants, their officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from (1) making, using, selling, offering to sell, or importing into the U.S. any ball practice device covered by the '250 patent, including the Accused Product; (2) otherwise directly or indirectly infringing the '250 patent; and (3) passing off any SwingAway product as an Escalade product;

  F. Award to SwingAway compensatory damages in an amount sufficient to compensate it for Defendants' infringement of the '250 patent, together with pre- and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

  G. Award to SwingAway exemplary damages pursuant to 35 U.S.C. § 285 by reason of Defendants' willful infringement of the '250 patent;

  H. Order an accounting by Defendants to SwingAway for all sales, revenues, and profits derived from its infringing and deceptive activities and that at least three times those profits be disgorged and paid to SwingAway; and

    I.    Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff SwingAway Sports Products, Inc. respectfully requests a trial by jury of any and all issues for which a jury trial is available under applicable law.

Respectfully submitted,

/s/ Eric S. Pavlack
Eric S. Pavlack
PAVLACK LAW, LLC
6507 Ferguson Street, Suite 201
Indianapolis, IN 46220
(317) 251-1100
(317) 252-0352 *fax*
*Eric@PavlackLawFirm.com*

Paul B. Overhauser
John Bradshaw
OVERHAUSER LAW OFFICES LLC
740 W. Green Meadows Dr., Suite 300
Greenfield, IN 46140-4019
(317) 891-1500
866-283-8549 *fax*
*poverhauser@overhauser.com*
*jbradshaw@overhasuer.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

/s/ Eric S. Pavlack
Eric S. Pavlack